### 35147. MAYOR & ALDERMEN OF SAVANNAH *v.* MOSES ROGERS HOUSING CORPORATION.

DECIDED OCTOBER 27, 1954.

*A. Leopold Alexander*, for plaintiff in error.
*William L. Grayson*, contra.

QUILLIAN, J.   On August 12th, 1953, Moses Rogers Housing Corporation filed its petition in the Superior Court of Chatham County, Georgia, against the Mayor & Aldermen of the City of Savannah, a municipal corporation, in which it asked for a declaratory judgment to the effect that it was entitled to certain tax credits from the defendant by reason of the fact that the defendant had taken over certain sewerage lines and certain paved streets or ways in a project which the plaintiff had acquired from the United States Government.

The plaintiff alleged in its petition that, prior to 1950, it had purchased from the United States Government certain property now known as Riverside Gardens, formerly known as Moses Rogers Grove, which was at that time outside the corporate limits of the defendant; and that, prior to the purchase, the United States had installed in the property certain fire lines, water-distribution system, sewer system, and street paving.

In 1950 an act of the General Assembly (Ga. L. 1950, p. 2383) extended the corporate limits of the city so as to include this property within the city.

The act of 1950, Sec. 3, provides that the owners of property taken into the city, or their successors or assigns in title, would be reimbursed by the defendant by giving tax credits in lieu of receiving tax payments on such property in a sum equal in value

to the value of the facilities installed and improvements constructed by means of a method of computation provided for by an act of the General Assembly of Georgia, set forth in the act of 1951 (Ga. L. 1951, p. 2297, Sec. 10).

The petition then sets forth the facilities installed for which tax credits are sought in the amount of $20,925.

The petition alleges that the acts of 1950 and 1951, construed together, entitle it to these credits, and alleges that it made demand on the defendant for these credits, which demand was refused. It alleges that an actual controversy exists between the plaintiff and the defendant as to whether or not these credits are due, and prays that its rights be determined by means of a declaratory judgment, requiring the defendant to issue to it tax credits in the amount of $20,925.

To this petition the defendant filed its answer, in which it admitted that the plaintiff purchased the property in question from the United States Government for $201,111.11, receiving from it a quitclaim deed dated November 28, 1949; that the acts referred to were duly passed; and that a demand for tax credits was refused by it. It denies that the two acts in question are to be construed together, but alleges that the act of 1951 supersedes the act of 1950 with regard to the issuance of tax credits; and alleges that for lack of sufficient information it is unable to admit or deny the alleged value of the facilities, but calls for strict proof of the same. The plaintiff in error joins in the prayer for a declaratory judgment to guide it in the event of similar claims being presented to it.

Answering further, it alleges that the United States Government installed the facilities in question; that, since the plaintiff purchased the entire property from the Government for a lump sum, it is impossible to say what amount, if any, was paid for the facilities by the plaintiff; that, since there was no law in existence at the time of the purchase of the property, and the conveyance was by quitclaim deed, it could not convey a right with respect to the property which did not exist at the time of the conveyance; that, if the plaintiff did acquire any rights under the act of 1950, by its failure to take any steps to secure the same prior to the adoption of the act of 1951, such rights were terminated by the adoption of the later act; and that there-

fore the plaintiff is not entitled to the issuance of any tax credits.

The case came on for a hearing in the Superior Court of Chatham County, and after arguments had thereon the court issued an order, in which he found that the plaintiff was entitled to tax credits in the amount of $20,925, the amount asked, and ordered their issuance by the defendant.

To this order the defendant excepted, on the grounds: (1) that the judgment was in error and the judge should have decided that the plaintiff was not entitled to any tax credits; and (2) the judge undertook to decide a question of fact, namely, the amount of tax credits due, this being a disputed fact, and under the Declaratory Judgments Act, this question should have been submitted to a jury for its decision.

For the sake of convenience in this opinion, the City of Savannah will be referred to as the defendant and Moses Rogers Housing Corporation·as the plaintiff.

The streets constructed and the water and sewer mains installed on the real-estate development known as Riverside Gardens, or Moses Rogers Grove, became a part of it. When the entire property was later conveyed by quitclaim deed from the United States Government to the plaintiff, title to the facilities above referred to, being a component part of the realty, was by the deed vested in the plaintiff. At the time the quitclaim deed was made, neither the streets nor the water and sewer mains had been taken over by the city. It follows that no right to tax credits was or could have been conveyed by the Government to the plaintiff.

Nevertheless, the plaintiff, by virtue of the quitclaim deed, having become the owner of the whole real-estate development, had the right to be paid for any portion of it thereafter taken for public purposes. Constitution, art. I, sec. III, par. I; Code (Ann.) § 2-301. Both the act of 1950, extending the limits of the City of Savannah so as to embrace the real-estate development, and the act of 1951 amendatory thereof, sought to fix as just compensation for the streets and water and sewer facilities taken by the city in making such extension of its limits, an amount in tax receipts to be issued by the defendant city to the plaintiff, the amount of ·which tax credits was to be equal to the reasonable value of the cost of installing the water and sewer

mains, and one-third of the actual cost of grading and paving the streets.

But, if the credits to which the plaintiff would be entitled should be greater under the act of 1951 than under the act of 1950—since it is not contended that the provisions of the act of 1950 did not provide just compensation for the facilities taken by the defendant—the defendant by the act of 1950 acquired a vested right to have the amount of tax credits to which plaintiff was entitled computed according to its provisions. A subsequent act prescribing some other method of arriving at the tax credits, so as to increase the amount to which the plaintiff would be entitled, would deprive the defendant of its right to have the amount of the credits determined under the act of 1950. Indeed, because it is a reciprocal vested right of both the plaintiff and the defendant under the act of 1950, it could not be taken from either of them by any law thereafter enacted.

The complaint of the defendant (plaintiff in error here) that the trial court erred in passing upon an issue of fact is well taken, and for this reason the judgment must be reversed. The pleadings made an issue of fact, the parties did not waive trial by jury, and under Code (Ann. Supp.) § 110-1103, the defendant was entitled to a trial by a jury of twelve.

The trial court should answer the question of law presented by the petition in accordance with what is above written, namely, (1) that the plaintiff is entitled to be issued tax credits under the act of 1950; and (2) that the amount of these tax credits be computed as prescribed by the act of 1950.

*Judgment reversed. Felton, C. J., and Nichols, J., concur.*