*McElreath & Wilkerson,* for defendants.

---

## LEE *v.* METROPOLITAN LIFE INSURANCE CO.

1. In order to maintain a defense by the insurer, to an action upon a policy of life insurance issued by it, that the applicant was guilty of actual fraud or made material misrepresentations in procuring such policy, which misrepresentations changed the character of the risk as contemplated in the policy so issued by the company, it is not necessary, under section 21 of the act of August 19, 1912, entitled "an act to provide for the establishment of a department of insurance," etc. (Georgia Laws 1912, p. 119), for the insurer to show that the misrepresentations enlarged the extent of the risk in the particular case. The foregoing, in principle, answers the next question in the series propounded by the Court of Appeals.

2. A material representation in an application for life insurance is "one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing the amount of the premium in the event of such acceptance." This rule was not changed by the provisions of section 21 of the act of August 19, 1912, supra.

3. The failure of an insurance company, other than one writing policies of insurance on the industrial plan, "to have made a strict medical examination" of an applicant for life insurance will not prevent the insurer from setting up, as a defense to an action upon the policy written upon such application, that the applicant was guilty of actual fraud, or made material misrepresentations in procuring the policy, which changed the character and nature of the risk as contemplated therein, though the falsity of the representations or statements in the application would have been discoverable by the making of such strict medical examination, where the falsity of such statements or representations was not actually known to the company or any of its agents.

4. Section 21 of the act of August 19, 1912, supra (Civil Code, § 2499 (a) ), does not alter or repeal the rule, that, in order to work a waiver for the falsity of material representations in an application for life insurance, actual notice to the company, or some authorized agent, of

the falsity of such representations is necessary, and that constructive notice is insufficient to effect such waiver.

No. 4056.   JUNE 20, 1924.

The Court of Appeals (in case No. 14427) certified the following questions:

1.   Under section 21 of the act of August 19, 1912 (Ga. L. 1912, p. 119; Park's Annotated Code of 1914, § 2499-a), in order to maintain the defense by the insurer, to an action upon a policy of life insurance issued by it, that the applicant was guilty of actual fraud, or made material misrepresentations in procuring such policy, which representations changed the character and nature of the risk as contemplated in the policy so issued by the company, is it necessary for the insurer to show that the misrepresentations enlarged the extent of the risk in the particular case; in other words, does the clause of the above-mentioned act, "which misrepresentations change the character and nature of the risk as contemplated in the policy so issued by the company," require proof that if the representations had been true the particular applicant would probably have had a longer expectancy of life, or that the alleged misrepresentations changed the character of the risk as to the particular applicant, in order that the defense above mentioned may be maintained?

2.   Under section 21 of the act of August 19, 1912 (Ga. L. 1912, p. 119; Park's Annotated Code of 1914, § 2499-a), in order to maintain the defense by the insurer, to an action upon a policy of life insurance issued by it, that the applicant was guilty of actual fraud, or made material misrepresentations in procuring such policy, which representations changed the character and nature of the risk as contemplated in the policy so issued by the company, is it necessary for the insurer to show that some material fact which was misrepresented contributed or probably contributed toward producing the death of the insured or other event maturing the benefits of the policy, in part or in whole, earlier than would have been the case if the representation had been true?

3.   It was said by this court in *Empire Life Insurance Company* v. *Jones,* 14 *Ga. App.* 647 (2), that a material representation in an application for life insurance "is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing the amount of the premium in the event of such

acceptance." Is this now the correct rule for determining the materiality of such representations, in view of section 21 of the act of August 19, 1912? If not, then this court desires instructions as to what is the correct rule for determining their materiality under the provisions of this act.

4. Will the failure of an insurance company, other than one writing policies of insurance on the industrial plan, "to have made a strict medical examination" of an applicant for life insurance prevent the insurer from setting up, as a defense to an action upon the policy written upon such application, that the applicant was guilty of actual fraud, or made material misrepresentations in procuring the policy, which changed the character and nature of the risk as contemplated therein, if the falsity of the representations or statements in the application would have been discoverable by the making of such strict medical examination, even though the falsity of such statements or representations was not actually known to the company or any of its agents? See section 21 of the act of the General Assembly of August 19, 1912 (Georgia Laws, 1912, p. 119; Park's Annotated Code of 1914, § 2499-a).

5. Does section 21 of the act of August 19, 1912 (Ga. L. 1912, p. 119; Park's Annotated Code of 1914, § 2499-a), alter or repeal the rule, that, in order to work a waiver of the falsity of material representations in an application for life insurance, actual notice in the company or some authorized agent of the falsity of such representations is necessary, and that constructive notice is insufficient to effect such waiver? (See *Wiley* v. *Rome Insurance Co.*, 12 *Ga. App.* 186 [76 S. E. 1067]; *Liverpool & London & Globe Ins. Co.* v. *Hughes,* 145 *Ga.* 716 (2)).

If either question No. 4 or No. 5 should be answered in the affirmative, then this court desires instructions in answer to the following further question:

6. What general standard or degree of diligence in the insurer in making the medical examination of an applicant for life insurance is required by the provisions of section 21 of the act of August 19, 1912, "that all insurance companies, except companies writing policies of insurance on the industrial plan, writing life insurance in this State, including fraternal orders and all other associations, shall be required to have made a strict medical examination of each and every person applying for life insurance?

*Key, McClelland & McClelland,* for plaintiff.

*Smith, Hammond & Smith,* for defendant.

BECK, P. J.   1.   We are of the opinion that the questions numbered 1 and 2, set forth above, should be answered in the negative. In the case of *Mutual Life Ins. Co.* v. *Bolton,* 22 *Ga. App.* 566 (96 S. E. 442), it was said: "In general, it may be said that the test, in determining whether questions contained in an application for insurance are material, is whether knowledge or ignorance of the facts sought to be elicited thereby would materially influence the action of the insurer." The rule thus tersely laid down followed the decision in the case of *Empire Life Ins. Co.* v. *Jones,* 14 *Ga. App.* 647 (82 S. E. 62). This latter case set forth and adopted as the test, in determining whether questions contained in an application for insurance are material, the rule and doctrine stated by well-known text-writers on the subject of insurance. The rule itself, as stated by the Court of Appeals and as laid down by text-writers, is thus set forth: "It is now generally well settled that a material representation is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing the amount of the premium in the event of such acceptance; and, as observed in Richards' Insurance Law (3d ed.), par. 99, p. 132, 'the materiality of a concealment or representation of fact depends, not on the ultimate influence of the fact upon the risk or its relation to the cause of loss, but on the immediate influence upon the party to whom the communication is made, or is due, in forming his judgment at the time of effecting the contract. The party thus sought to be influenced is generally the insurance company. Though the loss should arise from causes totally unconnected with the material fact concealed or misrepresented, the policy is void, because a true disclosure of the fact might have led the company to. decline the insurance altogether, or. to accept it only at a higher premium.' See also the cases cited in support of this statement, and see 1 May on Insurance (4th ed.), par. 184, in which the author says: 'The test of the materiality of a misrepresentation or concealment is that it influences the insurer in determining whether to accept the risk, and what premium to charge.' The same doctrine is laid down in 3 Cooley's Briefs on the Law of Insurance, 1953, as follows: 'In general, it may be said that the test, in determining whether

questions contained in an application for insurance are material, is whether the knowledge or ignorance of the facts sought to be elicited thereby would materially influence the action of the insurer.' This statement is approved by this court in *Ætna Life Insurance Co.* v. *Conway,* 11 *Ga. App.* 562 (75 S. E. 915), and numerous well-considered opinions from courts of last resort sustain the authors referred to." And the rule thus laid down is well stated; and there is nothing in section 21 of the act of August 19, 1912 (Georgia Laws 1912, p. 119), requiring a restatement of the rule. In part, section 21 of the act of 1912 is in the following language: "Such persons [applying for life insurance] shall submit to such reasonable rules and regulations as may be prescribed by such insurance companies for the purpose of making such examinations, and after a policy is issued on the life of such person, the beneficiary of such policy shall be entitled to collect the amount of such policy under the terms of the contract when it matures, unless the applicant or beneficiary has been guilty of actual fraud or has made material misrepresentations in procuring such policy, which misrepresentations change the character and nature of the risk as contemplated in the policy so issued by the company. All statements, covenants, and representations contained in applications for insurance shall never be held or construed to be warranties, but shall be held to be representations only." And it is urged in the brief of counsel for plaintiff in error that this legislative enactment contained in the language just quoted materially changes the rule which existed prior to the passage of the act, and manifests an intention upon the part of the legislature to "further protect the insured and to make the payment of insurance more certain, and to do away with all possibility of a defense of fraud or misrepresentation of fact by the insured to the insurer where it did not materially increase the risk." We can not agree with this contention. A policy of insurance is a contract between the insurer and the insured. If the insured in his application for insurance can make material false representations, that is, representations which are material in the sense of the rule stated above, defining the materiality of representations in an application for insurance, then a party to a contract of insurance, the insured, could, by fraud, or what would be fraud if used to procure any other kind of a con-

tract, secure a policy of insurance which would not have been issued to him by the insurance company but for fraudulent misrepresentations made in the application for insurance. It would require language too plain to need construction to justify us in imputing to the legislature an intention to make permissible upon the part of one seeking to secure a contract of insurance conduct which would be deemed fraudulent if employed to secure a contract of any other kind. Section 21 of the act contains language which in itself prevents us from imputing to the legislature such an intention; for in the very section which plaintiff in error relies upon we find this language, after providing that the beneficiary of the policy shall be entitled to collect the amount of the policy according to its terms when it matures: "unless the applicant or beneficiary has been guilty of actual fraud or has made material misrepresentations," etc. If fraudulent representations of material facts are made in an application for insurance, the materiality being tested by the rule stated above, the policy is void, and the insurer can defend upon the ground of the invalidity of such a policy, without proving "that if the representations had been true, the particular applicant would probably have had a longer expectancy of life, or that the alleged misrepresentations changed the character of the risk as to the particular applicant." Nor would the insurer be required to prove, in order to maintain his defense based upon the ground that the policy was void because of fraud, that "some material fact which was misrepresented contributed or probably contributed toward producing the death of the insured or other event maturing the benefits of the policy in part or in whole earlier than would have been the case if the representation had been true."

2. From what is said above it will be seen that the rule stated in the third question for determining the materiality of a representation in an application for life insurance is the correct rule, and is not changed by section 21 of the act of August 19, 1912.

3. The failure of an insurance company, "other than one writing policies of insurance on the industrial plan," to have made a strict medical examination of an applicant for life insurance will not prevent the insurer from setting up, as a defense to an action upon the policy written upon such application, that the applicant was guilty of actual fraud, or made material misrepre-

sentations in procuring the policy which changed the character and nature of the risk as contemplated therein, although the falsity of the representations or statements in the application would have been discoverable by the making of such strict medical examination, where the falsity of such statements or representations is not actually known to the company or any of its agents. It is true that section 21 of the act of August 19, 1912, requires, in explicit language, that "all insurance companies, except companies writing policies of insurance on the industrial plan, writing life insurance in this State, including fraternal orders and all other associations, shall be required to have made a strict medical examination of each and every person applying for life insurance." We can see very good reason for the medical examination which the insurance companies are in this part of section 21 required to have made; but we do not think the requirement in the legislative act that a medical examination shall be made can be construed to relieve the applicant for insurance of the effect of fraudulent representations of material facts made in his application.

4. Section 21 of the act of August 19, 1912, supra (Civil Code, § 2499 (a)), does not alter or repeal the rule, that, in order to work a waiver of the falsity of material representations in an application for life insurance, actual notice to the company or some authorized agent of the falsity of such representations is necessary, and that constructive notice is insufficient to effect such waiver. *Liverpool & London & Globe Ins. Co.* v. *Hughes,* 145 *Ga.* 716 (89 S. E. 817), and cases cited.

*Answers in negative. All the Justices concur, except Russell, C. J., dissenting.*